UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN ELLIS, | CASE NO. 4:16CV868 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Christopher Allen Ellis ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on July 19, 2016, Plaintiff asserts that the administrative law judge ("ALJ"): (1) failed to find his cardiomyopathy and podiatric issues severe; (2) failed to follow the treating physician rule; and (3) improperly relied on the vocational expert's ("VE") testimony. ECF Dkt. #13 at 17-23. Defendant filed a response brief on October 3, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on December 17, 2012, alleging disability beginning on that same date. ECF Dkt. #12 ("Tr.") at 184.[2] This claim was denied

---

[1] On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

initially and upon reconsideration. *Id.* at 93-112. Following the denial, Plaintiff requested a hearing before an ALJ, which was held on July 31, 2014. *Id.* at 35. On August 29, 2014, the ALJ denied Plaintiff's application for SSI. *Id.* at 17. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1.

On April 12, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on July 19, 2016. ECF Dkt. #13. Defendant filed a response brief on October 3, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on August 29, 2014, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2012, the date his application for SSI was filed. *Id.* at 22. The ALJ determined that Plaintiff's severe impairments were morbid obesity and degenerative disc disease. *Id.* Continuing, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 23. After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for two hours in an eight-hour workday, ten minutes at a time; and sit for six hours in an eight-hour workday, one hour at a time. *Id.* at 24. The ALJ indicated that Plaintiff could not climb ladders, ropes, or scaffolds, and could not crawl. *Id.* Additionally, the ALJ stated that Plaintiff could: occasionally climb ramps or stairs; occasionally kneel or crouch; and frequently balance or stoop. *Id.*

Next, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. at 27. The ALJ then indicated that Plaintiff was a younger individual on the date his application was filed, had at least a high school education and was able to communicate in English, and that the transferability of job skills was not an issue since his past relevant work was unskilled. *Id.* at 28. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ determined that Plaintiff had not been under a disability, as

defined in the Social Security Act, since December 17, 2012, the date his application for SSI was filed. *Id.* at 29.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V. ANALYSIS

### A. Cardiomyopathy and Podiatric Issues

Plaintiff asserts that the ALJ failed to consider the interactive and cumulative impact of his impairments, and instead took each impairment separately, minimized the stated impairments, and concluded that no impairment was serious enough to result in a finding of disability. ECF Dkt. #13 at 17. Continuing, Plaintiff claims that the evidence showed that his heart issues had more than a minimal impact on his ability to perform basic work activities. *Id.* Regarding his podiatric issues, Plaintiff states that he was diagnosed with, and received medication for, gout multiple times. *Id.* In addition to gout, Plaintiff indicates that he had plantar heel pain with plantar fasciitis. *Id.* For these reasons, Plaintiff states that the medical evidence shows that his cardiopathy, combined with his podiatric issues, presents more that minimal limitations in his ability to perform basic work activities. *Id.* at 18. Additionally, Plaintiff claims that he meets Listing 1.02 (major dysfunction of a joint) and Listing 4.02 (chronic heart failure) due to the impact of morbid obesity on his ability to function. ECF Dkt.

#13 at 22-23. Plaintiff states that he has a body mass index ("BMI") of over fifty, which indicates the most severe level of impact on functioning.[3] *Id.*

Defendant contends that the ALJ addressed the relevant listings, Listing 1.02(A) (major dysfunction of a joint) and Listing 4.02 (chronic heart failure), no medical source suggested that Plaintiff medically equal any listed impairment, and the state agency reviewing physicians also concluded that he did not medically equal any listed impairment. ECF Dkt. #17 at 5. Continuing, Defendant states that Social Security Ruling ("SSR") 02-1p explains that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirement of a listing," in which case the step three criteria would be met. *Id.* at 6. Defendant also indicates that the obesity itself may be so severe that it substitutes for an impairment specified by a listing. *Id.* at 6-7. However, according to Defendant, there was no indication that Plaintiff was unable to ambulate effectively for a period of twelve months, as required by Listing 1.02(A) (and as defined in Listing 1.00B2). *Id.* at 6. Defendant also notes that the ALJ stated that Plaintiff was "up and doing everything he needs to do," and that he could play baseball. *Id.* at 7. According to Defendant, these statements indicate that Plaintiff "could independently initiate, sustain, or complete activities of daily living." *Id.*

Turning to Listing 4.02, Defendant argues that Plaintiff has not demonstrated a "combination of pulmonary or cardiovascular impairment and obesity [with] signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings." *Id.* at 7 (quoting SSR 02-1p). Defendant correctly indicates that the Listing requires that the criteria of both the (A) and (B) paragraphs be met. ECF Dkt. #17 at 7. Defendant asserts that there is no opinion evidence that Plaintiff's morbid obesity was of equal medical significance to the findings required to satisfy Listing 4.02(A), and that even if it were, Plaintiff's impairments in combination were not sufficient to satisfy the requirements of Listing 4.02(B). *Id.*

---

[3]Plaintiff discusses Listing 1.02 and Listing 4.02 in the section of his brief regarding the alleged violations of the treating physician rule. ECF Dkt. #13 at 22-23. These issues are more properly presented here, as the ALJ addressed the listings at step three of the sequential evaluation.

Plaintiff's argument is without merit. The Sixth Circuit has held that it is not reversible error for an ALJ to fail to identify an additional severe impairment when at least one severe impairment was identified and the ALJ then continued with the remaining steps in the disability evaluation. *Maziarz v. Sec. of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007); *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003) (internal citations omitted). Here, the ALJ identified severe impairments, namely morbid obesity and degenerative disc disease, and then continued with the remaining steps of the sequential evaluation. Tr. at 22-29. Further, the ALJ discussed Plaintiff's cardiomyopathy and podiatric issues, and explained why it was determined that these impairments were not severe. Although Plaintiff disagrees with the ALJ regarding the severity of these impairments, he has failed to show that the ALJ committed reversible error when finding that Plaintiff's cardiomyopathy and podiatric issues were not severe impairments and did not cause more than minimal limitations in his ability to perform basic work activities.

Further, Plaintiff has failed to show that the ALJ erred when determining that he did not meet the requirements of Listing 1.02 or Listing 4.02. Plaintiff asserts that he had a BMI of over fifty, and thus met these listings due to the impact of his morbid obesity on his ability to function. ECF Dkt. #13 at 22-23. No explanation is provided by Plaintiff as to how he believes he satisfies the specific criteria of either listing. *See id.* The ALJ specifically addressed Listing 1.02, stating that there was no indication that there was the involvement of a major peripheral joint: resulting in an inability to ambulate effectively; or in each of the upper extremities which resulted in an inability to effectively perform fine and gross movements. Tr. at 23. The ALJ also addressed Plaintiff's cardiovascular symptoms, stating that: he reported chest pain with exertion in 2013, but stated that it only lasted for three to four minutes and was relieved with medication; he denied cardiovascular symptoms such as chest pain and shortness of breath in

2014; and his cardiomyopathy was non-severe as it was adequately controlled with medication.[4] *Id.* at 23. The the ALJ explained why Plaintiff did not meet Listing 1.02 or the listings regarding cadiovascular system impairments, which include Listing 4.02. Plaintiff claims that his high BMI demonstrates that he meets Listing 1.02 and Listing 4.02, but fails to explain how he meets the specific requirements of these listings. As such, Plaintiff has failed to show that the ALJ erred in finding that he did not meet the requirements of any listed impairment(s).

### B. Treating Physician Rule

Plaintiff also asserts that the ALJ failed to comply with the treating physician rule. ECF Dkt. #13 at 18-23. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

---

[4]The ALJ does not specifically mention Listing 4.02, however, Plaintiff does not indicate that he raised Listing 4.02 with the ALJ.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Specifically, Plaintiff claims that the ALJ failed to afford controlling weight to the opinion of his treating physicians, David L. Anstadt, M.D., Mazen Mahjoub, M.D., and Kenneth Jones, M.D. ECF Dkt. #13 at 18-23. Plaintiff also takes issue with the ALJ's treatment of the opinion of the physician who performed his consultative examination, Mary-Helene Massullo, D.O. *Id.* at 19-20. The opinion of each physician will be discussed below in the order Plaintiff addressed each opinion in his brief.

### 1. Dr. Massullo

Plaintiff first asserts that Dr. Massullo's opinion was "based on a cursory one-time examination and cannot take the place of opinions from long-standing treating physicians which are ordinarily assigned controlling weight if well-supported and not inconsistent with other

substantial weight in the record."[5] ECF Dkt. #13 at 19. Continuing, Plaintiff avers that since the ALJ afforded substantial weight to Dr. Massullo's opinion, it was required that all findings in the opinion be adopted unless reasons were provided for declining to adopt portions of the opinion. *Id.* Plaintiff also states that Dr. Massullo's opinion was inconsistent because the ALJ noted no less than thirteen medical conditions but still found that he could perform work-related activities, and stated that the opinion mentioned Plaintiff's ability to play baseball.[6] *Id.* at 18-20. Further, Plaintiff states that the ALJ relied on a single report from Plaintiff of "very little pain," his ability to play baseball, and his ability to do "everything he needs to do" without articulating why these activities support a finding that he was able to perform ongoing substantial gainful activity. *Id.*

Plaintiff fails to explain how Dr. Massullo's opinion was inconsistent, instead simply restating the findings made by Dr. Massullo. *See* ECF Dkt. #13 at 18. No explanation is provided as to how Dr. Massullo's medical findings were inconsistent with her finding that Plaintiff could perform work-related activities. Dr. Massullo noted the following thirteen medical conditions: morbid exogenous obesity; congestive heart failure; hypertension (poor control); chest pain relieved with medication; non-insulin dependent diabetes; chronic arthralgia of the left knee; chronic arthralgia of the right knee; chronic arthralgia of the left ankle; chronic arthralgia of the right ankle; history of tobacco use; a single instance of pneumonia; flat feet (corrected); and hypercholesterolemia per medications. Tr. at 376. Plaintiff fails to show, or

---

[5]Plaintiff also suggests that the report issued by Dr. Massullo did not meet the statutory requirements for an adequate consultative examination, but fails to explain how the report is deficient or what statutory requirements were not met. *See* ECF Dkt. #13 at 19. Instead Plaintiff merely states that the report was "inadequate." *Id.* The Court declines to speculate as to how Plaintiff believes Dr. Massullo's report was inadequate.

[6]Here, Plaintiff also claims that "the report of a non-examining medical consultant cannot override the opinion of physicians who have been treating a claimant for years." ECF Dkt. #13 at 20. Plaintiff cites 20 C.F.R. § 416.926(d)(2) in support of this proposition, however, the cited section does not support Plaintiff's assertion. Further, Plaintiff's statement is not a proper recitation of the treating physician rule, as the opinions of treating physicians can be discounted in favor of opinions of non-treating sources as long as the ALJ provides "good reasons" for discounting the treating source's opinion. *See Wilson*, 378 F.3d at 544; SSR 96-2p.

provide substantive arguments, that these medical conditions would prevent him from performing work-related activities.

Further, Plaintiff claims that "[c]ontrary to assertions by the ALJ, Dr. Massullo's report does not mention baseball, nor Plaintiff's ability to play baseball." ECF Dkt. #13 at 19. The ALJ did not claim that Dr. Mussoll's report mentioned Plaintiff's ability to play baseball. *See* Tr. at 24-25. While the ALJ mentions Plaintiff ability to play baseball in the paragraph in which Dr. Mussollo's opinion is addressed, the ALJ cited to Dr. Jones' evaluation, rather than any report prepared by Dr. Massullo. Tr. at 25. For these reasons, the ALJ did not err in the treatment of Dr. Mussollo's opinion.

### **2.** **Dr. Jones**

Next, Plaintiff briefly claims that the ALJ pointed out that Dr. Fogany noted that Plaintiff had no arthritis, but that Dr. Fonagy was a podiatrist and the ALJ should have more properly relied on Dr. Jones' opinion since he was a orthopedist.[7] ECF Dkt. #13 at 20. It is unclear as to why Plaintiff believes a podiatrist was unqualified to address his allegedly disabling impairments considering Plaintiff alleged disability partially on podiatric issues, as discussed above. *See also* ECF Dkt. #13 at 2. Moreover, Dr. Fonagy was evaluating Plaintiff's feet, whereas Dr. Jones diagnosed joint disease in Plaintiff's right knee. Tr. at 403, 423. Additionally, Plaintiff claims that generally more weight is assigned to specialists than non-specialists. This statement does not augment Plaintiff's argument as it appears from the record that both Dr. Fonagy and Dr. Jones were practicing in their specialized fields of medicine. *See* Tr. at 403, 423.

Continuing, Plaintiff asserts that Dr. Jones' statement that Plaintiff was "up and around and doing almost everything he needs to do" did not give any detail as to what activities he was performing and "had absolutely nothing to do with his ability to work." Tr. at 481. The Court disagrees. The full portion of Dr. Jones' treatment note at issue reads:

> CHIEF COMPLAINT: [Plaintiff] comes in today. He says he has very little pain. He says he gets a little stiffness with the weather changes, but he said other than that he is up and around and doing almost everything he needs to do.

---

[7]Plaintiff asserts that Dr. Jones was a treating source, but does not claim that the ALJ violated the treating physician rule regarding Dr. Fonagy's opinion. *See* ECF Dkt. #13 at 18, 20.

-10-

Tr. at 481. While this portion of Dr. Jones' treatment note is not specific as to Plaintiff's activities, the fact that he reported little pain, a little stiffness when the weather changed, and that he could perform "almost everything" that he needed to do is probative as to whether Plaintiff was unable to work. Moreover, the most recent treatment notes from Dr. Jones indicate that Plaintiff had been playing baseball and could walk any number of city blocks without rest or significant pain. *Id.* at 418, 481. The ALJ provided "good reasons" for discounting Dr. Jones' opinion and the opinion is inconsistent with the other substantial evidence in the record. Accordingly, the ALJ did not violate the treating physician rule when addressing the opinion of Dr. Jones.

### **3.** **Dr. Mahjoub**

Next, Plaintiff asserts that the ALJ gave the opinion of his treating cardiologist, Dr. Mahjoub, little weight because it was inconsistent with his alleged ability to play baseball. ECF Dkt. #13 at 20. After restating Dr. Majoub's medical findings, Plaintiff claims that the ALJ failed to provide a legally sufficient explanation as to why he did not assign controlling weight to Dr. Mahjoub's opinion since the ALJ cited only one of Dr. Mahjoub's treatment notes and Plaintiff's denial of chest pain, rapid heart rate, or shortness of breath to Dr. Jones nearly ten years later. *Id.*

Defendant argues that Dr. Mahjoub does not qualify as a treating physician. ECF Dkt. #17 at 16-17. It is not necessary to address this argument because the ALJ provided "good reasons" for discounting Dr. Mahjoub's opinion and thus properly discounted the opinion whether Dr. Mahjoub was a treating or non-treating source. *See* SSR 96-2p. The ALJ cited treatment notes and opinion evidence indicating that Plaintiff maintained good to fair mobility and good dexterity, and that he was able to play baseball. *See* Tr. at 26 (internal citations omitted). Further, the ALJ cited treatment notes and opinion evidence demonstrating that Plaintiff's cardiomyopathy was controlled with medication to the extent that he denied experiencing cardiovascular symptoms. *See id.* The ALJ provided "good reasons" for discounting the weight assigned to Dr. Mahjoub's opinion in the form of medical evidence,

-11-

opinion evidence, and the notation of Plaintiff's activities. Accordingly, the ALJ did not violate the treating physician rule when evaluating Dr. Mahjoub's opinion.

### 4. Dr. Anstadt

Continuing, Plaintiff avers that the ALJ erred in assigning little weight to the opinion of Dr. Anstadt. ECF Dkt. #13 at 21. Plaintiff claims that the ALJ neglected to reconcile Dr. Anstadt's RFC assessment with his treatment notes and the other evidence in the record, and that Dr. Anstadt's opinion is consistent with other medical evidence in the record. *Id.* at 21-22. Like the treatment of Dr. Mahjoub's opinion, the ALJ pointed to specific inconsistencies in Dr. Anstadt's opinion and the record as a whole, namely: Plaintiff's report that his cardiovascular symptoms were relieved with medication and only lasted three to four minutes; his good to fair mobility, good dexterity, 5/5 strength, and normal range of motion; and his reports of very little pain following his surgery. Tr. at 26 (internal citations omitted). The evidence cited by the ALJ constitutes substantial evidence that is inconsistent with Dr. Anstadt's opinion that Plaintiff was unable to perform full-time work. The ALJ provided "good reasons" for discounting Dr. Anstadt's opinion and did not violate the treating physician rule.

### C. VE Testimony

Finally, Plaintiff claims that the ALJ relied on testimonial evidence based on hypothetical individuals that did not accurately reflect Plaintiff's capabilities. ECF Dkt. #13 at 23. Plaintiff's argument regarding the VE's testimony is reliant on the success of at least one of his prior arguments regarding his RFC and the treating physician rule. As stated above, the ALJ did not violate the treating physician rule, and the findings contained in the decision were supported by substantial evidence. Accordingly, Plaintiff's argument regarding the VE's testimony fails.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: September 14, 2017            */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE